# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAFAYETTE DIVISION

CARDELL K. FUSILIER                     CIVIL ACTION NO. 6:12-cv-0580
    LA. DOC #445088
VS.                                     SECTION P

                                        JUDGE REBECCA F. DOHERTY

WARDEN BURL CAIN                        MAGISTRATE JUDGE PATRICK J. HANNA

### REPORT AND RECOMMENDATION

*Pro se* petitioner Cardell K. Fusilier, a prisoner in the custody of Louisiana's Department
of Public Safety and Corrections, filed the instant *habeas corpus* petition pursuant to 28 U.S.C.
§2254 on February 2, 2012.  Petitioner attacks convictions for forcible rape, aggravated
kidnapping and simple robbery and the concurrent sentences of life, forty, and seven years
imposed by Louisiana's Fifteenth Judicial District Court, Lafayette Parish. This matter has been
referred to the undersigned for review, report, and recommendation in accordance with the
provisions of 28 U.S.C. §636 and the standing orders of the Court.  For the following reasons it
is recommended that the petition be **DISMISSED WITH PREJUDICE** pursuant to Rule 4 of
the Rules Governing Section 2254 Cases in the District Court.

### *Background*

On October 2, 2003 the Lafayette Parish Grand Jury indicted petitioner and charged him
with one count of aggravated kidnapping, five counts of aggravated rape, and one count of first
degree robbery. These charges were assigned docket number 2003-cr-100348 of the Fifteenth
Judicial District Court, Lafayette Parish. [Doc. 1-2, p. 88]

He opted for a bench trial and on October 8, 2004 he was found guilty of aggravated

kidnapping, five counts of forcible rape, and one count of simple robbery.  On November 18, 2004 he was sentenced to serve life without parole on the kidnapping conviction.  He was sentenced to serve concurrent sentences of 40 years on each of the rape convictions and seven years on the robbery conviction. [Doc. 1-2, p. 87]

Appellate counsel was appointed and in due course, petitioner appealed his conviction to the Third Circuit Court of Appeals arguing three assignments of error – (1) insufficiency of the evidence regarding forcible rape; (2) the trial court erred in admitting evidence of a prior sex offense as permitted by LSA Code of Evidence Rule 412.2; and, (3) the trial court erred when it qualified Detective Chris Cogburn of the Lafayette Police Department as an expert witness. [Doc. 1-2, pp. 2-11] On February 1, 2006 the Third Circuit affirmed the convictions in an unpublished opinion.  *State of Louisiana v. Cardell K. Fusilier*, 2005-00837 (La. App. 3 Cir. 2/1/2006), 924 So.2d 516 (Table); see Slip Opinion at Doc. 1-3, pp. 2-20.

On February 8, 2006 appellate counsel provided a copy of the opinion and advised petitioner that he would seek further direct review in the Louisiana Supreme Court, but only with regard to Assignment of Error Number Two. [Doc. 1-2, pp. 12-13] Thereafter, in a pleading dated March 3, 2006, counsel for petitioner applied for writs in the Louisiana Supreme Court with regard to Assignment of Error Number Two.  The argument presented by counsel alleged no Constitutional violations with regard to the evidentiary claim. [Doc. 1-2, pp. 14-24] On September 29, 2006 the Supreme Court denied writs without comment. *State of Louisiana v. Cardell K. Fusilier*, 2006-0508 (La. 9/29/2006), 937 So.2d 852.  On October 3, 2006 counsel provided petitioner with a copy of the writ denial and advised him of his right to seek post-conviction relief. [Doc. 1-3, pp. 21-22]

2

On April 2, 2007 petitioner filed a *pro se* application for post-conviction relief in the Fifteenth Judicial District Court.  The table of contents [Doc. 1-2, p. 28] and the application form [Doc. 1-2, pp. 41-42] set forth only three claims for relief:

(1) "The conviction was obtained in violation of the Constitution of the United States or the State of Louisiana." In support of this claim petitioner argued, "My lawyer failed to investigate the facts that other people were around, to witness what actually happened between me and [the victim], and he didn't object to all the illegal procedures that took place while trial was going on."

(2) "Petitioner's Constitutional right to a fair trial has been violated when the state elicited false information with leading questions to the witness in violation of the U.S. Constitution and Louisiana Constitution of 1974."  In support of this claim he alleged, "When [the victim] was testifying to an event in which her and the Petitioner were engaged in sexual intercourse, the State led [the victim] in her thesis during the course of this testimony, starting on page 28 of the trial transcript, the record reflects that when counsel for the State was questioning [the victim] on the stand he was leading her in her testimony."

(3) "Petitioner's right under the U.S. Constitution 5th and 14th Amendments and Louisiana Constitution of 1974 Bill of Rights Article 1, §§2, 3, 13, and 16, has been violated when the State used perjured testimony to enhance the severity of the evidence alleged in this proceeding."  In support of this claim he alleged, "The witness Ms. Carolyn Booker testifying her education is outdated, that her training has been scant, the schools that she has been to are few, and her experience is not that great your Honor. She's only been doing this for a short while. I think the mere fact that she has been accepted in a previous case does not necessarily dictate that

3

this court must accept her. And, no offense intended, but essentially she is a forensic chemist by education and training which I think would hardly qualify her to be a DNA expert. Again the court stated, 'we'll note your objection for the record.' The trial continued from point on, with the witness Ms. Carolyn Booker testifying. See Trial Transcript pages 59-69." [Doc. 1-2, pp. 41-42]

In the memorandum accompanying the application, petitioner argued nine claims:

(1) "The conviction was obtained in violation of the Constitution of the United States Sixth Amendment and Article 1, §13 of the Louisiana Constitution of 1974, right to assistance of counsel."  In support of this claim he argued that his trial attorney "failed to conduct pre-trial investigations and subpoena an eyewitness, who would have testified that he and the alleged victim ... left the convenience store without incident." [Doc. 1-2, pp. 52-57]

(2) "Petitioner's Constitutional right to a fair trial has been violated when the state elicited false information with leading questions to the witness in violation of the U.S. Constitution and Louisiana Constitution of 1974."  In support of this claim petitioner argued, "Counsel failed to object to the State leading the witness [victim], when she was testifying to certain issues regarding certain aspects of the offenses in question."  He then argued that the prohibited questions – concerning the color of the towel used in the commission of the offense – was in violation of Article 611 of  the Louisiana Evidence Code. [Doc. 1-2, pp. 57-59]

(3) "Petitioner's right under the U.S. Constitution 5th and 14th Amendments and Louisiana Constitution of 1974 Bill of Rights Article 1, §§2, 3, 13, and 16 has been violated when the State used perjured testimony to enhance the severity of the evidence alleged in this proceeding."  In support of this claim he alleged, "Testimony reveals that the alleged victim ...

4

and the state's witness C. Brooks, gave false information to the court while on the stand, which led the court to believe that the evidence was factual , when in fact it was all part of an elaborate scheme to convict this Petitioner because he has been considered a bad man, from his prior conviction." [Doc. 1-2, pp. 59-63]

(4) "Petitioner's Fifth and Fourteenth Amendment of the U.S. Constitution and Article 1, §§ 3, 13, 15, and 16 of the Louisiana Constitution of 1974 was violated when the trial court allowed testimony to be elicited by an unskilled expert in the field of DNA." In support of this claim petitioner pointed to the exchange between Ms. Booker and counsel for the petitioner concerning her qualifications to testify as an expert witness. He also claimed, without more, that the court erred in allowing Officer Cogburn to testify as an expert in finger-print analysis, and that Booker failed to conduct tests on other suspects.  [Doc. 1-2, pp. 63-67]

(5) "Petitioner's right to a fair trial has been violated when the state introduced evidence of other crimes evidence to convict." In support of this argument petitioner alleged that the State was allowed to argue the prior sex crime evidence in its opening statement because, since the proceeding was a bench trial, the attorneys and the court agreed to conduct the hearing during the case in chief. [Doc. 1-2, pp. 67-69]

(6) "Petitioner has been denied the right to a fair trial by allowing inconsistent statements to be used to convict." In support of this claim he alleged certain inconsistencies between the victim's trial testimony and statements attributed to her in the police report, and concludes, "... had he obtained a fair trial procedure, the facts would not be so confusing as to whether this petitioner actually kidnapped [victim] or that due to the nature of the circumstances [she] was just covering her tracks so that she wouldn't look like she was actually making a run for drugs in

5

which she could not pay for, so she lured petitioner into a false sense of security by allowing for sexual foreplay that turned physical."  [Doc. 1-2, pp. 69-74]

(7) "Petitioner's right to a fair trial has been violated in violation of the U.S. Constitution, and Louisiana Constitution by introducing other crimes evidence."  In this claim petitioner argued that evidence of his sex offender registration was admitted without first conducting a hearing to determine whether this "other crimes" evidence was admissible. [Doc. 1-2, pp. 74-76]

(8) "Petitioner's right to equal protection of the law under the Fourteenth Amendment to the United States Constitution has been violated when the prosecution failed to allow the expert testimony expert witness cross examination for accuracy." In this claim petitioner apparently argued that the state's cross-examination of the defense's expert witness went beyond the scope of the witness's expertise and qualifications. [Doc. 1-2, pp. 76-79]

(9) "Petitioner's right to due process has been violated when the investigating officer mislead [sic] the petitioner into believing that he can talk after being informed of his right to remain silent."  In this final claim, petitioner argued that the arresting officer who advised him of his Miranda Rights asked him to sign a waiver and explained, "It's not signing the admittance [sic] of guilt. It's just sign [sic] that you are ... willing to ... speak to me." He claims this statement was misleading. [Doc. 1-2, pp. 79-80]

On May 2, 2007 the State filed an Answer to the application. [Doc. 1-2, pp. 89-94] On July 16, 2009 a hearing was convened. Counsel was appointed to represent the petitioner. Relief was denied. [Doc. 1-3, p. 32 (minutes)][1]

---

[1] Apparently the trial court offered reasons for judgment at the conclusion of the hearing and those reasons for judgment are thus set forth in the transcript of the post-conviction hearing. [See Doc. 1-3, p. 33, wherein the Third Circuit noted that fact.] Petitioner, however, did not

On May 13, 2010 petitioner submitted a writ application to the Third Circuit Court of

Appeals. [Doc. 1-2, pp. 95-104][2] On October 7, 2010 the Third Circuit denied relief as follows,

> Writ Denied: Relator first complains that the trial court did not furnish him with a copy of the denial of his application for post-conviction relief. However, this is disproved by the transcript of the hearing at which his application for post-conviction relief was denied, which includes the ruling, and fully complies with the requirements of La. Code Crim.P. art. 930.1.

> As to any claim seeking relief from the trial court's denial of his application for post-conviction relief, upon the showing made, he fails to carry his burden of proving entitlement to the relief sought. Relator did not attach a copy of his application for post-conviction relief, or either argue, or offer any proof of an alleged error in the denial of his application.

*State of Louisiana v. Cardell K. Fusilier*, No. KH 10-00423 (La. App. 3 Cir. 10/7/2010) Doc. 1-3, p. 33.

Petitioner applied for writs in the Louisiana Supreme Court in a pleading dated

November 14, 2010. [Doc. 1-2, pp. 105-123] Petitioner argued the following Assignments of

Error:

(1) "The District Court erred in summarily denying petitioner's Motion of Production of

Documents in support of his defense and claim of ineffective assistance of counsel, thus denying

petitioner of a fair and full blown hearing, due to prosecution stating that 'no such recorded or

written statement requested exist, does not exist, has never existed and was never taken.'" [Doc.

1-2, p. 114] The "statement" referred to by petitioner was an alleged "statement" of the clerk on

---

provide a copy of this transcript. Further, the Court Minutes reflect that, according to petitioner's attorney, "most post conviction relief issues have been resolved..." prior to the hearing. [Doc. 1-3, p. 32]

[2] Petitioner did not provide a complete copy of his application for writs.  It appears that the document he submitted to the Court of Appeals contained 37 pages [see Doc. 1-2, p. 104], however, petitioner did not provide copies of pages 3-36 to this Court. [Doc. 1-2, pp. 102-103]

duty at the convenience store the night of the victim's abduction.  In this assignment of error he

claimed counsel was ineffective for failing to investigate Mrs. Adeline Ann Skipper, the night

clerk in question. Petitioner also argued, that the Assistant District Attorney's assertion that no

such "statement" ever existed was "contrary" to "... a narrative report by detective Stelly there

was a black male with braids in his hair who bought one cigar after [the victim] left the cashier

window, who possibly saw [the victim] and petitioner leaving the store together willingly as what

petitioner testified to at trial."  He thus implied that his trial counsel was ineffective for failing to

investigate this potential defense. [Doc. 1-2, pp. 114-116]

     (2) "Petitioner contends the district court and appellate court erred when they denied him

of his sixth and fourteenth amendment to the United States Constitution and Article 1, Section 2

and 13 of the Louisiana Constitution of 1974, when their error consisted of erroneous factual

findings based upon the prosecution misleading the district court to believe no such documents or

reports existed."  In support of this claim petitioner conceded that in July 2009 he received a

copy of the initial police report, and, that on August 7, 2009 he received from the District

Attorney a copy of Detective Stelly's Supplemental Report.  Petitioner then claimed that these

reports established the identity of the store clerk and the fact that she observed a black male with

braids who purchased a cigar after the victim left the window.

     Petitioner also argued that at the hearing on his application for post-conviction relief, his

post-conviction counsel requested a continuance "to contact the person identified by [petitioner]

as the witness and see if that would have some effect on the possibility of over turning this ...

conviction."  However the motion for continuance was denied. Petitioner argued that his trial

counsel's failure to investigate the night clerk to determine the possibility of providing a defense

amounted to ineffective assistance of counsel. None of petitioner's other post-conviction claims were argued in the Supreme Court. [See Doc. 1-2, pp. 105-123]

On November 14, 2011 petitioner's writ application was denied. [*State of Louisiana ex rel. Cardell K. Fusilier v. State of Louisiana*, 2010-2529 (La. 11/14/2011), 75 So.3d 445; Doc. 1-3, p. 34]

Petitioner filed his *pro se* writ of *habeas corpus* on February 2, 2012.  Petitioner argues 12 claims for relief and argues that the first 3 claims (sufficiency of the evidence, admission of prior sex offense, and unreliable expert witness testimony) were raised on direct appeal and that all state court remedies were ultimately exhausted with regard to these claims; he claims that the remaining 9 claims (effective assistance of counsel, leading questions, perjured testimony, improper admission of  DNA testimony, improper admission of other crimes evidence (sex offender status), introduction of inconsistent statements, other crimes evidence, improper cross-examination of the defense expert, and misleading information provided to petitioner by investigating officer) were raised in his application for post-conviction relief and that all available state court remedies were thereafter exhausted with regard to these claims.

### *Law and Analysis*

Rule 4 of the Rules Governing Section 2254 Cases in the District Courts provides in pertinent part, "If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner."  Petitioner has provided copies of the brief filed on his behalf on direct appeal, along with the application for writs filed on his behalf in the Louisiana Supreme Court seeking further direct review. He also provided a copy of his application for post-conviction

9

relief filed in the District Court, a partial copy of his writ application filed in the Third Circuit seeking review of the District Court's judgment denying post-conviction relief, and a complete copy of the application for writs filed in the Louisiana Supreme Court seeking further post-conviction review.  As is shown more fully below, these documents, especially the writ applications filed in the Louisiana Supreme Court on direct review and on collateral review reveal that contrary to his assertion, petitioner did not fairly present ALL of his federal *habeas* claims to the Louisiana Supreme Court,  and therefore state court remedies with respect to these claims remain unexhausted but now procedurally defaulted and therefore subject to dismissal in accordance with Rule 4 on that basis.

Further, with regard to the remaining claim which was presented to the Supreme Court and thus arguably exhausted, petitioner's claim of ineffective assistance of counsel, that claim is clearly without a basis in fact or law and therefore it is also subject to dismissal in accordance with Rule 4.

### *Exhaustion of State Court Remedies and Procedural Default*

Federal *habeas corpus* review of state court convictions is limited by the intertwined doctrines of procedural default and exhaustion of state court remedies. Procedural default exists where (1) a state court clearly and expressly bases its dismissal of the petitioner's constitutional claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, ("traditional" procedural default), or (2) the petitioner fails to properly exhaust all available state court remedies, and the state court to which he would be required to petition would now find the claims procedurally barred, ("technical" procedural default). In either instance, the petitioner is deemed to have forfeited his federal *habeas* claims. *Bledsue v.*

*Johnson*, 188 F.3d 250, 254-55 (5th Cir.1999) citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.

1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1986) and *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct.

1728, 144 L.Ed.2d 1 (1999).

      The federal *habeas corpus* statute and decades of federal jurisprudence require a

petitioner seeking federal *habeas corpus* relief to exhaust all available state court remedies prior

to filing his federal petition. 28 U.S.C. § 2254(b)(1)(A); *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct.

1198, 71 L.Ed.2d 379 (1982);  *Minor v. Lucas*, 697 F.2d 697 (5th Cir.1983);  *Mercadel v. Cain*,

179 F.3d 271, 275 (5th Cir.1999);  *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir.1999); *Whitehead*

*v. Johnson*, 157 F.3d 384, 387 (5th Cir.1998).  In order to satisfy the exhaustion requirement, the

petitioner must have "fairly presented" the substance of his federal constitutional claims to the

state courts in a "procedurally proper manner." *Wilder v. Cockrell*, 274 F.3d 255, 259 (5

Cir.2001); *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999);

*Magouirk v. Phillips*, 144 F.3d 348, 360 (5th Cir.1998) citing *Richardson v. Procunier*, 762 F.2d

429, 431-32 (5th Cir.1985);  *Mercadel*, 179 F.3d at 275 citing *Dupuy v. Butler*, 837 F.2d 699,

702 (5th Cir.1988); *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir.1982), *cert. denied*, 460 U.S.

1056, 103 S.Ct. 1508, 75 L.Ed.2d 937 (1983); *Deter v. Collins*, 985 F.2d 789, 795 (5th Cir.

1993).  Moreover, each claim must be presented to the state's highest court, even when review by

that court is discretionary. *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1

(1999);  *Magouirk*, 144 F.3d at 360 citing *Richardson*, 762 F.2d at 431-32. In Louisiana, the

highest court is the Louisiana Supreme Court. *See* LSA – Const. Art. 5, §5(a) ("The Supreme

Court has general supervisory jurisdiction over all other courts...")

      Thus, in order for a Louisiana prisoner to have exhausted his state court remedies, he

must have fairly presented the substance of his federal constitutional claims to the Louisiana

Supreme Court in a procedurally correct manner. *Nobles v. Johnson*, 127 F.3d 409, 420 (5th

Cir.1997), *cert. denied*, 523 U.S. 1139, 118 S.Ct. 1845, 140 L.Ed.2d 1094 (1998). Exhaustion

requires that any federal constitutional claim presented to the state courts be supported by the

same factual allegations and legal theories upon which the petitioner bases his federal claims.

*Picard v. Connor*, 404 U.S. 270, 276, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971).

### *Direct Appeal*

Petitioner was represented by court-appointed appellate counsel in his direct appeal.

Counsel argued three assignments of error on direct appeal – (1) insufficiency of the evidence

regarding forcible rape; (2) trial court error in admitting evidence of a prior sex offense as

permitted by LSA Code of Evidence Rule 412.2; and, (3) the trial court erred when it qualified

Detective Chris Cogburn of the Lafayette Police Department as an expert fingerprint witness.

[Doc. 1-2, pp. 2-11] On February 1, 2006 the Third Circuit addressed each assignment of error

and affirmed the convictions in an unpublished opinion. *State of Louisiana v. Cardell K.

Fusilier*, 2005-00837 (La. App. 3 Cir. 2/1/2006), 924 So.2d 516 (Table); see also Slip Opinion at

Doc. 1-3, pp. 2-20.  Thereafter, counsel corresponded with petitioner and advised that he would

seek further direct review of Assignment of Error Number 2. [Doc. 1-2, pp. 12-13[3]] Counsel

---

[3] Counsel advised petitioner, "I have reviewed this decision in light of the Supreme
Court's considerations under Rule 10 of the rules as to whether supervisory writs might be
granted. Under current Louisiana law you do not have a right to appointed counsel on
discretionary review or post conviction application. But from time to time the Appellate Project
will authorize its lawyers to pursue supervisory writs to the Supreme Court if there is some major
issue which can be brought forward on such application.  In your particular case due to the
severity of this sentence and the fact that there is some question about the prejudicial effect of
introducing the juvenile adjudication in your case [ ] I am apply for that permission and hope to
be able to seek supervisory writ by March 1, 2006 with the Louisiana Supreme Court.

submitted his writ application to the Supreme Court on March 3, 2006, and, as promised, argued

only other crimes evidence claim to the Supreme Court. [Doc. 1-2, pp. 14-24] Clearly then,

petitioner did not present his sufficiency of the evidence and expert witness claims to the

Supreme Court and state court remedies as to those claims were not exhausted.

Further, with regard to the other crimes evidence claim, counsel failed to identify any

violation of the United States Constitution.  Indeed, counsel initially framed the issue before the

Supreme Court as "Whether the State can present the victim of a prior rape in a subsequent trial

as admissible 'lustful disposition' evidence, even where such evidence is highly prejudicial and

otherwise admissible." [Doc. 1-2, p. 20] He presented the Assignment of Error as follows, "The

Court of Appeal erred in holding that the erroneous admission of testimony from a male witness

complaining of a prior rape by the defendant, while prejudicial, was not reversible because the

probative value outweighed the prejudicial impact." [*Id.*] Counsel argued that the Court violated

Louisiana law in its determination that the complained of evidence was in fact admissible.

Indeed, counsel cited no provisions of the United States Constitution or any United States

statutes  [Doc. 1-2, p. 17] , and his only references to federal jurisprudence were to *Roper v.*

*Simmons*, 543 U.S. 551 (2005) (a case cited for the proposition that there are "important

distinctions" between adult and juvenile offenders) [Doc. 1-2, p. 22] and *Old Chief v. United*

*States*, 519 U.S. 172 (1997) (which was cited for the general proposition that unfair prejudice

may lure the trier of fact into finding guilt based on what transpired before trial and not the

evidence ultimately adduced at trial.) [*Id.*]

---

Unfortunately, that is the end of the effort in the 3rd Circuit Court of Appeal and the only issue
that will be subject to being raised in the Supreme Court will be Assignment of Error number 2."

In order to satisfy the exhaustion requirement, a federal *habeas corpus* petitioner must have "fairly presented" the substance of his <u>federal claim</u> to each level of the state court in order <u>to allow the state courts the initial opportunity to correct federal constitutional violations</u>. *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir.2001); *Baldwin v. Reese*, 541 U.S. 27, 124 S.Ct. 1347, 1349 (2004) ("Before seeking federal *habeas* relief, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), giving the State the 'opportunity to ... correct' alleged violations of its prisoners' <u>federal rights,</u>' *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865, which means he must 'fairly present' his claim in each appropriate state court <u>to alert that court to the claim's federal nature</u>.); *Brown v. Dretke*, 419 F.3d 365 (5th Cir. 2005); *Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982); *Taylor v. Cain*, 545 F.3d 327, 332 (5th Cir. 2008) ("Exhaustion is a statutory obligation on petitioners who seek federal *habeas* relief to present and pursue all claims in state court prior to requesting federal collateral relief. 28 U.S.C. § 2254(b). <u>Even when the inmate presents to the state court all the relevant facts</u> <u>and makes a related state-law claim, there is no exhaustion unless he 'asserts the claim in terms</u> <u>so particular as to call to mind a specific right protected by the [federal] Constitution or alleges a</u> <u>pattern of facts that is well within the mainstream of constitutional litigation</u>.' *Kittelson v. Dretke*, 426 F.3d 306, 315 (5th Cir.2005) (quotations and citation omitted). This means that a petitioner must alert the state courts to the 'federal nature' of the claim. *Baldwin v. Reese*, 541 U.S. 27, 33, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004).

Petitioner's appellate counsel did not assert a violation of the Constitution and laws of the United States in his application for writs filed in the Louisiana Supreme Court and therefore, his claim concerning the misapplication of the Louisiana Code of Evidence Article 412.2 remains

unexhausted.

### *Post Conviction*

Petitioner filed a *pro se* application for post-conviction relief raising nine claims, including a claim of ineffective assistance of counsel. [Doc. 1-2, pp. 26-86] When his application was rejected by the Fifteenth Judicial District Court [Doc. 1-3, p. 32], he applied for review in the Third Circuit Court of Appeals where he raised some if not all of the claims presented to the District Court. [Doc. 1-2, pp. 95-104] In due course the Third Circuit denied writs. *State of Louisiana v. Cardell K. Fusilier*, No. KH 10-00423 (La. App. 3 Cir. 10/7/2010) Doc. 1-3, p. 33. Petitioner then filed a *pro se* writ application in the Louisiana Supreme Court, but inexplicably, he presented only one of the nine post-conviction claim for review – ineffective assistance of counsel based upon counsel's failure to investigate. [Doc. 1-2, pp. 105-123[4]]

Again, since petitioner failed to argue these claims before the Louisiana Supreme Court, he did not exhaust available state court remedies with regard to the remaining eight claims raised in his application for post-conviction relief.

### *Technical Exhaustion/Procedural Default*

Of course, should petitioner attempt to return to the Louisiana Courts to raise his claims anew, his efforts would be doomed to failure since a second application for post-conviction relief would be barred by the provisions of La. C.Cr.P. art. 930.4(D) which prohibit repetitive applications, or, more likely, as time-barred by La. C.Cr.P. art. 930.8 which establishes a two-

_____

[4] Petitioner also argued at length that the trial court erred in denying a motion for discovery filed in conjunction with the application for post-conviction relief. Petitioner argued the existence of police reports which identified the clerk employed at the convenience store at the time petitioner abducted his victim.

year period of limitations for filing post-conviction claims; nor could petitioner now seek review

of the denial of his application for post-conviction relief.[5]

Thus, while petitioner's Assignments of Error on direct appeal and Claims 2-9 on post-

conviction were not exhausted, they can be said to be "technically exhausted" since no state-

court remedies remain available. A petitioner has "technically exhausted" his federal claim if he

fails to properly and timely present it to the state courts and is thereafter barred from seeking

relief in those courts. *Magouirk v. Phillips*, 144 F.3d 348 (5th Cir.1998) citing *Coleman v.*

*Thompson*, 501 U.S. 722, 731-33, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1986) and *Sones v. Hargett*,

61 F.3d 410, 416 (5th Cir.1995); *Coleman*, 111 S.Ct. 732, 735 fn. 1; *Bledsue*, 188 F.3d at

254-55; *Fuller v. Johnson*, 158 F.3d 903, 905-06 (5th Cir.1998). In such a case, however, there is

no difference between non-exhaustion and procedural default. *Magouirk*, 144 F.3d at 358.

Accordingly, when a petitioner fails to exhaust state court remedies because he has allowed his

federal claims to lapse, those claims are considered "technically" procedurally defaulted. *Id.*

This court may not review the merits of these procedurally defaulted claims unless

petitioner demonstrates that he should be excused from application of the procedural default

---

[5] Art. 930.4(D) provides, "A successive application may be dismissed if it fails to raise a
new or different claim." Art. 930.8(A) provides, No application for post-conviction relief,
including applications which seek an out-of-time appeal, shall be considered if it is filed more
than two years after the judgment of conviction and sentence has become final under the
provisions of Article ... 922." Under art. 922 , petitioner's judgment of conviction became final
when the Supreme Court denied writs on direct review, or, on or about September 29, 2006. *State
v. Fusilier*, 2006-0508 (La. 9/29/2006), 937 So.2d 852. Clearly more than 2 years have elapsed
since that date therefore petitioner would be unable to mount a second round of post-conviction
litigation. Nor could petitioner now return to the Louisiana Supreme Court to seek review of his
unexhausted direct appeal or post-conviction claims. See Supreme Court Rule X, §5(a) ("An
application seeking to review a judgment of the court of appeal ... after a denial of an application,
shall be made within thirty days of the mailing of the notice of the original judgment of the court
of appeal.")

doctrine. This he can do by showing proper exhaustion of his state court remedies, or, failing that, by showing either cause and prejudice or that a miscarriage of justice will result from the denial of federal *habeas corpus* review. *See Finley*, 243 F.3d 215, 220-221 (5th Cir. 2001); *Coleman*, *supra; McCleskey v. Zant*, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991); *Moore v. Roberts*, 83 F.3d 699 (5th Cir.1996); *Gray v. Netherland*, 518 U.S. 152, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996); *Sones*, 61 F.3d at 416. *Murray*, 477 U.S. at 496, 106 S.Ct. at 2649; *Glover*, 128 F.3d at 904; *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir.1995); *Callins v. Johnson*, 89 F.3d 210, 213 (5th Cir.1996) quoting *McClesky*, 499 U.S. at 495, 114 S.Ct. at 1471.

### Cause and Prejudice

In *Murray v. Carrier*, the Supreme Court explained that "cause" in this context  refers to an impediment external to the defense: "[W]e think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. Without attempting an exhaustive catalog of such objective impediments to compliance with a procedural rule, we note that a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable, would constitute cause under this standard. *Id.* at 488, 106 S.Ct. at 2645 (internal citations omitted)."

Clearly, the cause of the default herein identified was appellate counsel's reasoned decision to omit Assignments of Error Nos.1 and 3 in his writ application to the Supreme Court, his subsequent failure to argue a violation of federal law with respect to Assignment of Error No. 2,  and,  petitioner's own inexplicable failure to advance all but one of his nine post-conviction

claims to the Supreme Court.  These failures were clearly not "... an impediment external to the

defense..."[6]  Thus, petitioner has not shown "cause" for his default, and, if a petitioner fails to

demonstrate cause, the court need not consider whether there is actual prejudice. *Saahir v.*

*Collins*, 956 F.2d 115, 118 (5th Cir.1992).  Nevertheless, in this case, even if petitioner can show

cause for his default, he cannot show prejudice since he is unable to show that even  properly

filed writ applications would have resulted in  judgments in his favor.

### *Miscarriage of Justice*

In order for a *habeas corpus* petitioner to avoid a procedural default by showing a

fundamental miscarriage of justice, the petitioner must assert his actual innocence by showing

that "a constitutional violation has probably resulted in the conviction of one who is actually

innocent." *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986);

*Glover*, 128 F.3d at 904. To support such an exception, the petitioner must allege that as a factual

matter he did not commit the crime. *Corwin v. Johnson*, 150 F.3d 467, 473 (5 Cir.1998); *Ward v.*

*Cain*, 53 F.3d 106, 108 (5 Cir.1995). Thus, the petitioner must make a "colorable  showing of

factual innocence." *Callins v. Johnson*, 89 F.3d 210, 213 (5th Cir.), *cert. denied*, 519 U.S. 1017,

117 S.Ct. 530, 136 L.Ed.2d 416 (1996) quoting *McClesky v. Zant*, 499 U.S. 467, 495, 114 S.Ct.

---

[6] Ineffective assistance of appellate counsel may provide cause in this context, but "the exhaustion doctrine ... generally requires that a claim for ineffective assistance of counsel be presented to the state courts as an independent claim before it can be used to establish cause for procedural default." *Murray v. Carrier*, 477 U.S. 478, 488-89, 106 S.Ct. 2639, 2646, 91 L.Ed.2d 397 (1986).  A claim of ineffective assistance of counsel on direct appeal is an independent constitutional violation, which must itself be exhausted using state collateral review procedures. *Edwards v. Carpenter*, 529 U.S. 446, 451-53, 120 S.Ct. 1587, 1591-92, 146 L.Ed.2d 518 (2000). Since petitioner did not raise an independent claim of ineffective assistance of appellate counsel, he cannot rely on such a claim to establish "cause" sufficient to excuse his procedural default of these unexhausted claims. Compare *Hatten v. Quarterman*, 570 F.3d 595 (5th Cir. 2009).

1454, 1471, 113 L.Ed.2d 517 (1993). Petitioner has not shown that a fundamental miscarriage of justice as a result of this court's failure to consider his defaulted claims. Accordingly, petitioner cannot avoid procedural default on grounds of actual innocence.

### Merits – Ineffective Assistance of Counsel

Petitioner's remaining claim of ineffective assistance of counsel was arguably raised in post-conviction proceedings in the District Court, the Court of Appeals, and the Supreme Court, and therefore, it appears that petitioner has exhausted state-court remedies as to this claim alone. Petitioner did not provide a copy of the District Court's reasons for judgment denying his application; however, he did provide a copy of the Court Minutes which indicate that "Detective Stelly's report was provided, in full, to the defense..." and, that "after hearing arguments, the Court denied the continuance request and the motion for a post conviction relief." [Doc. 1-3, p. 32] He also provided a copy of the Third Circuit's judgment which denied writs because petitioner "... fail[ed] to carry his burden of proving entitlement to the relief sought." The Court of Appeals also noted that petitioner failed to provide "... a copy of his original application for post-conviction relief, or either argue, or offer any proof of an alleged error in the denial of his application."  *State v. Fusilier*, KH 10-00423 at Doc. 1-3, p. 33.

Petitioner's sole claim of ineffective assistance of counsel concerns trial counsel's failure "... to conduct pre-trial investigations and subpoena an eye witness who could have testified that he and the alleged victim ... left the convenience store without incident." [Doc. 1-1, p. 11] In the brief in support of his application for post-conviction relief (which he has apparently adopted as his brief in support of *habeas corpus*) he claimed, "... had the store clerk, who [the victim] purchased cigarettes and aspirin from, been called to testify it would have been revealed that

19

Petitioner and the alleged victim ... left the area in full view, where anyone and everyone who was present could have seen that this was no more unusual than prior occasions when he and [the victim] have met before in this same area to participate in the usual excursions that has occurred numerous times." [Doc. 1-2, p. 53] He also alleged, "... the alleged victim in this case claimed that she was abducted from a Chevron Gas station while other people were present, yet counsel failed to subpoena any witnesses who may have been conscious of the action taking place at the very moment that the alleged abduction was alleged to have taken place." [*Id.*] Finally, and most telling, he argued, "Had the store clerk been called to testify to the event of that night there is a very strong possibility that the outcome of this proceeding would be different." [Doc. 1-2, p. 55]

Further, in his application for writs filed in the Louisiana Supreme Court, petitioner admitted that as of the date of the post-conviction evidentiary hearing, his court-appointed post-conviction counsel moved for a continuance "to investigate the Chevron Store Clerk, Ms. Adeline Ann Skipper and a customer who was a Black male ..." [Doc. 1-2, p. 111] Thereafter, petitioner conceded that after several abortive attempts, he obtained the investigating officer's one page initial report (which he appended to his writ application as Exhibit A), and thereafter a copy of the supplemental report of Detective Stelly (which he appended to his writ application as Exhibit F). [Doc. 1-2, p. 117][7]  He concluded his argument in the Supreme Court by claiming that he instructed his trial attorney to investigate the Chevron Store clerk and, that had he done so, she "... could have corroborated petitioner's story and bolstered petitioner's defense that they [petitioner and the victim] left willingly together and she was one of his popular customers in buying and using drugs." [Doc. 1-2, p. 120]

---

[7] Petitioner, however, failed to provide copies of these reports with the instant petition.

In short, petitioner has argued in his post-conviction pleadings, and in this Court, that his court-appointed trial attorney rendered ineffective assistance. According to the pleadings, he should have located and interviewed the night clerk at the convenience store where this crime began.  Further, according to petitioner, had counsel done so, this witness would have corroborated his claim that he and the victim were acquainted, had conducted past drug deals at this location, and, more importantly, had departed the store together without incident. Notwithstanding the fact that petitioner now has in his possession the reports which identified the witness, he has failed to demonstrate that this witnesses would have provided exculpatory testimony as he has described.  Generally, " '[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'"  *Graves v. Cockrell*, 351 F.3d 143, 156 (5th Cir.2003) ( quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir.1978)).

Petitioner has throughout these proceedings cited the appropriate standard for analyzing claims of ineffective assistance of counsel arising under the Sixth Amendment to the United States Constitution.  To prevail on such a claim, a *habeas* petitioner must satisfy the two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *Id.*, 104 S.Ct. at 2064. Second, the petitioner must prove that he was prejudiced by his attorney's substandard performance. *Id.* at 2067. In order for a petitioner to show prejudice under *Strickland*, he must demonstrate that the testimony of the witness in question would have been favorable and that she would have testified at trial.

21

*Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir.1985).  Here, the only evidence of what the witness "could" have testified to, comes from the defendant himself.  Under such circumstances, this court should be reluctant to find ineffective assistance of counsel. *See Schwander v. Blackburn*, 750 F.2d 494, 500 (5th Cir.1985).  Petitioner has not demonstrated that counsel's failure to call this witness was a serious error; nor has the petitioner submitted anything other than his own self-serving and conclusory allegations to support his claim concerning the exculpatory nature of her expected testimony.

Since the Louisiana courts rejected petitioner's claim of ineffective assistance of counsel, this court may grant *habeas corpus* relief only if the state courts' adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d).

A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir.), *cert. denied*, 541 U.S. 1087, 124 S.Ct. 2812, 159 L.Ed.2d 249 (2004), citing *Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S.Ct. 1495, 1519–20, 146 L.Ed.2d 389 (2000). A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 120 S.Ct. at

1523; see also *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir.2001).

Factual determinations made by the state court are presumed to be correct and are unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  This presumption applies not only to explicit findings of fact, but "it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n. 11 (5th Cir.2001), *cert. denied*, 537 U.S. 883, 123 S.Ct. 106, 154 L.Ed.2d 141 (2002).  "[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Harrington v. Richter*, ─── U.S. ────, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011).

In light of the foregoing, it is clear that petitioner has not demonstrated that the rejection of his ineffective assistance of counsel claim by the Fifteenth Judicial District Court, the Third Circuit Court of Appeals, and the Louisiana Supreme Court resulted in either an unreasonable application of *Strickland v. Washington* or an unreasonable determination of the facts.

### *Conclusion*

Petitioner argues 12 claims for relief. Claims 1, 2, and 3 were raised on direct appeal and rejected by the Third Circuit Court of Appeals. Petitioner, through court appointed counsel, sought discretionary review of Claim 2 in the Louisiana Supreme Court, but in so doing, alleged no violation of the Constitution and laws of the United States. He did not seek further direct review of Claims 1 and 3.  Since petitioner did not fairly present the substance of his federal claims to the Louisiana Supreme Court, he failed to exhaust available state court remedies with respect to these claims.

Claims 4-12 were argued in petitioner's application for post-conviction relief filed in the Fifteenth Judicial District Court. When that court denied relief, petitioner apparently sought review of the claims in the Third Circuit Court of Appeals. That Court, too, rejected the claims, however, petitioner only sought further post-conviction review of Claim 4 – ineffective assistance of counsel.  Since Claims 5-12 were not fairly presented to the Louisiana Supreme Court, petitioner failed to exhaust state court remedies with regard to these claims.

Claims 1-3 and 5-12, while not exhausted, are now procedurally defaulted since petitioner would be unable to re-litigate these claims in the Louisiana Courts. This Court may review these procedurally defaulted claims, but only if petitioner can demonstrate "cause and prejudice" for his default, or, if he can demonstrate that a miscarriage of justice will result from the Court's failure to address the merits of these defaulted claims. Petitioner can show neither cause nor prejudice nor a miscarriage of justice and therefore he is not entitled to relief.[8]

With respect to Claim 4 – petitioner's claim of ineffective assistance of counsel – while this claim was arguably exhausted in the State courts, petitioner has not demonstrated that he is entitled to relief. He has not shown that the Louisiana courts' unreasonably applied federal law when they rejected his claim; nor has he demonstrated that the state courts' findings of fact were unreasonable. Since petitioner has not demonstrate deficient performance or prejudice, Claim 4

---

[8] Petitioner is reminded that this is a recommendation and not a judgment of dismissal. Should he object to this Report and Recommendation, he is encouraged to provide evidence and argument to establish that state court remedies were exhausted with respect to each claim. In the alternative, he should provide evidence and argument to establish cause and prejudice or a miscarriage of justice as outlined above.

must likewise be denied.[9] Therefore,

   **IT IS RECOMMENDED** that this petition for *habeas corpus* be **DENIED AND**

**DISMISSED WITH PREJUDICE** pursuant to Rule 4 of the Rules Governing Section 2254

Cases in the District Court.

   Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved

by this recommendation have fourteen (14) days from service of this report and recommendation

to file specific, written objections with the Clerk of Court.  A party may respond to another

party's objections within fourteen (14) days after being served with a copy of any objections or

response to the District Judge at the time of filing.

   **Failure to file written objections to the proposed factual findings and/or the**

**proposed legal conclusions reflected in this Report and Recommendation within fourteen**

**(14) days following the date of its service, or within the time frame authorized by**

**Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or**

**the legal conclusions accepted by the District Court, except upon grounds of plain error.**

***See, Douglass v. United Services Automobile Association***, 79 F.3d 1415 (5th Cir.  1996).

   Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States

District Courts, this court must issue or deny a certificate of appealability when it enters a final

order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of

---

   [9] Should petitioner object, he is encouraged to provide evidence to establish that the witness in question would have been available to testify at his trial and would have provided exculpatory evidence on his behalf. He should also provide a copy, if available, of the trial court's ruling denying his post-conviction application and, he should provide copies of the police reports which he claims demonstrate that the witness in question could provide exculpatory evidence.

appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties  may file a memorandum setting forth arguments on whether a certificate of appealability should issue.**  See 28 U.S.C. §2253(c)(2).  **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

In chambers, Lafayette, Louisiana April 23, 2012.

_____

**PATRICK J. HANNA**
**UNITED STATES MAGISTRATE JUDGE**